UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X      Case No.:
ANDRE DAVIS,

                            Plaintiff,

        -against-

  THE BROOKDALE HOSPITAL MEDICAL CENTER,

                         Defendant.
-------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff, Andre Davis, by and through his attorneys, Phillips & Associates, PLLC, complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq. ("ADEA"), the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq*. ("ADA"), and to remedy violations of the New York State Human Rights Law, New York State Executive Law, §§ 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et. seq*.  ("NYCHRL"), based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking damages to redress the injuries he has suffered as a result of being harassed and discriminated against by Defendant on the basis of his age and actual and/or perceived disability, together with creating a hostile work environment, retaliation and wrongful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343, and supplemental jurisdiction thereto.

3.  This action involves a Question of Federal Law.

4.  Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Eastern District of the State of New York.  28 U.S.C. §1391(b).

5.  On or about February 17, 2022, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC").

6.  On or about August 22, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7.  This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

8.  Plaintiff is a 55-year-old disabled male resident of the State of New York, County of Queens.

9.  At all times material, Defendant THE BROOKDALE HOSPITAL MEDICAL CENTER (hereinafter also referred to as "BROOKDALE HOSPITAL") was and is a domestic non-profit corporation duly incorporated under the laws of New York.

10. At all times material, Defendant BROOKDALE HOSPITAL was and is a private medical center located at 1 Brookdale Plaza, Brooklyn, NY 11212.

11. At all times material, Plaintiff was an employee of Defendant BROOKDALE HOSPITAL.

## MATERIAL FACTS

12. In or around June 2018, Plaintiff started working for Defendant BROOKDALE HOSPITAL as a "Housekeeping Manager."  Plaintiff's duties included supervising and monitoring the Housekeeping staff, ensuring that each area of the hospital met cleaning and safety standards, and filling out safety and cleanliness reports.

13. Throughout his employment, Plaintiff worked under the supervision of Assistant Director of Housekeeping, Joe Lorenzo, and Director of Housekeeping, Keith Stokum.

14. In or around September 2019, Plaintiff was diagnosed with Parkinson's disease.

15. Parkinson's disease "is a neurodegenerative disorder that affects predominately dopamine producing ('dopaminergic') neurons in a specific area of the brain called substantia nigra." Symptoms of the disease include tremors, limb rigidity, balance issues, problems with walking, and bradykinesia (impaired and slow movement of the limbs). Parkinson's disease has no cure but can be managed through the use of medication.[1]

16. Although Plaintiff's symptoms caused him to have visible tremors and walk slower, he was able to complete his reports and successfully monitor the Housekeeping staff without the need for a reasonable accommodation.

17. In or around September 2019, when his tremors became more noticeable, Plaintiff disclosed his Parkinson's disease diagnosis to his supervisors, Mr. Lorenzo and Mr. Stokum. In response, both Mr. Lorenzo and Mr. Stokum assured Plaintiff that his diagnosis and symptoms would not be an issue.

18. Every morning, at 7:00 a.m., Defendant BROOKDALE HOSPITAL's management conducted safety and protocol meetings with the Housekeeping staff.

19. In or around September 2019, during a 7:00 a.m. staff meeting, and in the presence of Mr. Lorenzo and Mr. Stokum, Plaintiff disclosed his Parkinson's disease diagnosis to the rest of the Housekeeping staff. Plaintiff decided to reveal his disability because a staff member recently passed away, and he did not want his coworkers and subordinates to be concerned about his well-being when they noticed his tremors or slower walk.

---

[1] *What is Parkinson's?*, PARKINSON'S FOUNDATION, https://www.parkinson.org/understanding-parkinsons/what-is-parkinsons (last visited Oct. 19, 2021).

3

20. Immediately after, Defendant BROOKDALE HOSPITAL's employees began to harass Plaintiff for his disability and age.

21. In fact, during that same meeting, coworker Mr. Seargwell (first name unknown), openly stated, "**You already move slow.  Are you going to move any slower**?"  Plaintiff was embarrassed and did not respond. Neither Mr. Lorenzo nor Mr. Stokum reprimanded Seargwell for his remark.

22. At the end of every day, Plaintiff needed to submit a physical copy of his Housekeeping report by dropping it off in Mr. Lorenzo's and Mr. Stokum's office (the "Managers' Office").

23. On a daily basis, Plaintiff also went to the Managers' office to take his Parkinson's disease medication.

24. Every time Plaintiff went to the Managers' office to drop off his Housekeeping reports or to take his medication, Mr. Lorenzo's Secretary, Ingrid Haywood, would call Plaintiff "**slowpoke**" and "**molasses**."

25. Additionally, on a near-daily basis, Ms. Haywood would announce Plaintiff's arrival to Mr. Lorenzo by stating, "**Molasses is here for you**." Mr. Lorenzo failed to remedy the harassment and/or prevent further harassment, so it continued.

26. For example, on numerous occasions, Ms. Haywood told Plaintiff, "**You're getting old**."

27. Similarly, on numerous occasions, Ms. Haywood would tell Plaintiff, "**You need Viagra to get it up**."

28. Plaintiff repeatedly asked Ms. Haywood to stop making remarks about his age and disability, but she simply laughed it off.

29. Additionally, due to Mr. Lorenzo's and Mr. Stokum's failure to address the harassment, other employees became empowered to join in the harassment.

4

30. For example, on a daily basis, Evening Shift Housekeeping Managers, Jose Quinones and Vincent (last name unknown), repeated Ms. Haywood's discriminatory comments by greeting Plaintiff with, "**What's up, slowpoke**?" or "**What's up, molasses**?"

31. In or around January 2020, Plaintiff telephoned Defendant BROOKDALE HOSPITAL's Labor Relations Manager, Odette Pompey, and requested a meeting to complain about the ongoing workplace harassment. Ms. Pompey brushed him off, stating that she was working remotely and "would handle the situation" when she returned on-site. However, Ms. Pompey never followed up with Plaintiff regarding this initial complaint.

32. Throughout 2020, and on at least four (4) occasions whenever Ms. Pompey worked on-site, Plaintiff physically approached Ms. Pompey to schedule a meeting to complain about the ongoing harassment. Each time, Ms. Pompey would tell Plaintiff that she was busy but she would call him. However, Plaintiff never received a call from Ms. Pompey.

33. From January 2020 to January 2021, Plaintiff telephoned the Labor Relations Department approximately twelve (12) times to schedule a meeting to formally complain about the ongoing harassment. Each time, Plaintiff was directed to leave a voicemail, which he did. On the few occasions when Ms. Pompey did answer the phone, she merely told Plaintiff that she would have to call him back. Plaintiff never received a call back from Ms. Pompey about any of his complaints.

34. In or around April 2020, Ms. Pompey questioned Plaintiff about a purported "harassment" claim that had been made by a member of the Housekeeping staff against *him*. Specifically, the employee was complaining that Plaintiff overly scrutinized his work, which was false. Plaintiff explained that he was simply performing his duties by monitoring the staff. **At the end of this conversation, Plaintiff complained to Ms. Pompey that Ms. Haywood and his**

5

**coworkers harassed him daily because of his age and disability**.  Ms. Pompey cut him off, simply stating that she would call Plaintiff back to finish their conversation at a later date. Again, Plaintiff never received a follow-up call from Ms. Pompey about this complaint.

35. Ms. Pompey did not intend to remedy and/or prevent any further harassment against Plaintiff, so it escalated.

36. For example, in or around July 2020, Plaintiff accidentally splashed some water on his pants when he was washing his hands after using the restroom. When he walked out of the restroom, and in the presence of Housekeeping Managers, Vincent (last name currently unknown), Mr. Quinones, and Secretary, Alexis Pitt, Ms. Haywood pointed at Plaintiff's crotch and stated that he "**need[ed] a diaper**."

37. Additionally, on a near-daily basis, Ms. Haywood continued to openly harass Plaintiff in front of coworkers by calling him, "**slow**," "**slowpoke**," and "**molasses**."

38. In or around January 2021, in the office, Plaintiff and Mr. Quinones were discussing Mr. Quinones' grandchildren.  During their conversation, Plaintiff stated that he has five children. Ms. Haywood interjected, stating, "**Nobody wants to be with *you*.  You're too old**."

39. In or around May 2021, in the office, during a conversation with Housekeeping Managers, Ray Marshall and Damian Finley, Plaintiff stated that he did not know the cause of his Parkinson's disease.  Ms. Haywood again interjected, "**I don't know *what* you did, but karma's coming to bite you in your ass**."

40. On another occasion, in or around May 2021, in the office, and after Plaintiff shared that he was one of eight children, Ms. Haywood stated, "**You would have been better off if your mother swallowed you.  Then she would have had seven.**"

6

41. In or around May 2021, Plaintiff emailed Ms. Pompey, once again requesting a meeting to discuss the ongoing harassment.  Ms. Pompey did not respond to Plaintiff's email.

42. That same month, during a new staff orientation meeting, Plaintiff again approached Ms. Pompey in person and complained that the workplace harassment was getting worse.  Once again, Ms. Pompey told Plaintiff that she was busy but would call him to discuss his complaint in more detail.  However, Plaintiff never received a call back from Ms. Pompey.

43. Throughout Plaintiff's employment, Labor Relations never investigated Plaintiff's complaints of workplace harassment.

44. On or about May 15, 2021, one of Plaintiff's subordinates, Camille Thompson, complained to Mr. Finley that coworker Brian (last name currently unknown) was sexually harassing her.

45. Shortly after, Mr. Finley told Plaintiff about Ms. Thompson's complaint against Brian.

46. On or about May 19, 2021, Plaintiff reprimanded Brian for leaving his post and going to Ms. Thompson's floor, which was on the hospital's 10th floor.  Plaintiff asked Brian to return to his post on the 11th floor and return with a union delegate so they could discuss disciplinary action.  However, Brian immediately contacted Ms. Pompey instead, and complained that Plaintiff was wrongfully threatening him with termination.

47. Despite ignoring each and every prior complaint of workplace harassment from Plaintiff, Ms. Pompey finally called Plaintiff back only to question him about Brian's complaint against him.  Plaintiff explained that he had just instructed Brian to return to his assigned floor and retain a union delegate to discuss the issue together.

48. On or about May 21, 2021, Ms. Thompson complained to Plaintiff that Brian left his post on the 11th floor again in order to sexually harass her.  Ms. Thompson also complained that Brian

called her "a popular girl around (Defendant BROOKDALE HOSPITAL)," and sent her shirtless photos of himself.

49. On or about May 24, 2021, Plaintiff escorted Ms. Thompson to the Labor Relations office so she could make a complaint.  When they arrived, Brian was already in the Labor Relations office and saw them walking in together.

50. Shortly after assisting Ms. Thompson with her complaint, Plaintiff received two threatening text messages from a number he did not recognize.

51. The text messages included language like "**Motherfucker that's good they fired your ass**" with emojis, indicating the sender was laughing at Plaintiff.

52. Immediately after, Plaintiff complained to Mr. Stokum about the threatening text messages and emailed them to him directly.  Mr. Stokum did not reply to Plaintiff's email.

53. On or about June 1, 2021, Ms. Haywood once again called Plaintiff "**molasses**."

54. Later that same day, Ms. Pompey and Mr. Stokum called Plaintiff into Mr. Stokum's office and terminated his employment.  During the meeting, Ms. Pompey and Mr. Stokum told Plaintiff that he was terminated because an employee made a complaint against him.  Ms. Pompey refused to identify the employee, but stated that the employee made a complaint against Plaintiff because of his shift schedule.

55. During that same meeting, Plaintiff asked Ms. Pompey whether she was investigating his complaints of workplace harassment and the threatening text messages he received after assisting Ms. Thompson with her complaint.  Ms. Pompey swept Plaintiff's complaints under the rug, simply stating that this was the first time that she heard about any text messages.

56. Shortly after his termination, Plaintiff learned that Mr. Finley, who also previously reported Ms. Thompson's sexual harassment complaint against Brian, was placed on a 45-day probation.

57. Defendant BROOKDALE HOSPITAL terminated Plaintiff because of his age and disability (Parkinson's disease).

58. Defendant BROOKDALE HOSPITAL perceived Plaintiff to be too "old" and "disabled" to perform his duties.

59. Defendant BROOKDALE HOSPITAL terminated Plaintiff because of his association with an individual in a protected class (Ms. Thompson).

60. Defendant BROOKDALE HOSPITAL would not have discriminated against Plaintiff but for his age and actual and/or perceived disability.

61. Defendant BROOKDALE HOSPITAL would not have retaliated against Plaintiff but for his complaints about workplace harassment.

62. As a result of Defendant BROOKDALE HOSPITAL's actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

63. As a result of Defendant BROOKDALE HOSPITAL's discriminatory and intolerable treatment of Plaintiff, he suffered severe emotional distress and physical ailments.

64. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

65. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

66. As Defendant BROOKDALE HOSPITAL's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant BROOKDALE HOSPITAL.

**AS A FIRST CAUSE OF ACTION**
**UNDER THE ADEA**
**DISCRIMINATION**

67. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. This claim is authorized and instituted pursuant to the ADEA, 29 U.S.C. §623, based upon unlawful employment practices of the above-named Defendant.  Plaintiff complains of Defendants' violation of the ADEA's prohibition against discrimination in employment based, in whole or in part, upon his age.

69. Defendant BROOKDALE HOSPITAL engaged in unlawful employment practices prohibited by 29 U.S.C. §623 by discriminating against Plaintiff because of his age.

**AS A SECOND CAUSE OF ACTION**
**UNDER THE ADEA**
**RETALIATION**

70. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. The ADEA, 29 U.S.C. §623(d) provides that it shall be an unlawful employment practice for an employer:

> "to … discriminate against any of his … applicants for employment … because such individual … has opposed any practice made unlawful by this section, or because such individual … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act."

72. Defendant BROOKDALE HOSPITAL engaged in an unlawful employment practice

prohibited by 29 U.S.C. §623(d) by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of his opposition to the unlawful employment practices.

### AS A THIRD CAUSE OF ACTION
### UNDER THE ADA
### DISCRIMINATION

73. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. Plaintiff claims that Defendant BROOKDALE HOSPITAL violated Title I and V of the Americans with Disabilities Act of 1990 (Publ. L. 101-336) as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101. Sec. 12112 specifically states:

> a. General Rule- No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

75. Defendant BROOKDALE HOSPITAL violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION
### UNDER THE ADA
### RETALIATION and INTERFERENCE

76. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

77. Sec. 12203 of the ADA. Prohibition against retaliation and coercion provides as follows:

> a. Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this

chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

b.  Interference, coercion, or intimidation: It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

78. Defendant BROOKDALE HOSPITAL violated Plaintiff's above rights as set forth herein.

**AS A FIFTH CAUSE OF ACTION**
**UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**
**<u>DISCRIMINATION</u>**

79. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's. . . age… disability . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

81. Defendant BROOKDALE HOSPITAL engaged in unlawful discriminatory practices by discriminating against the Plaintiff because of his age and actual and/or perceived disability, together with creating a hostile work environment and unlawful termination.

82. Defendant BROOKDALE HOSPITAL also engaged in unlawful discriminatory practices by discriminating against Plaintiff because of his association with Ms. Thompson and assistance with her sexual harassment complaint.

83. Plaintiff hereby makes a claim against Defendant BROOKDALE HOSPITAL under all of the applicable paragraphs of Executive Law Section 296.

**AS A SIXTH CAUSE OF ACTION**
**UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**
**RETALIATION**

84. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs

of this Complaint as if more fully set forth herein at length.

85. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory

practice:

> "For any person engaged in any activity to which this section applies to
> retaliate or discriminate against any person before he has opposed any
> practices forbidden under this article."

86. Defendant BROOKDALE HOSPITAL engaged in an unlawful and retaliatory discriminatory

practice by retaliating, and otherwise discriminating against Plaintiff because of his opposition

to its unlawful actions, including his complaints of age and disability discrimination and

association with Ms. Thompson and assistance with her sexual harassment complaint.

**AS A SEVENTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY HUMAN RIGHTS LAW**
**DISCRIMINATION**

87. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

88. The Administrative Code of the City of New York §8-107 [1] provides that "It shall be an

unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because

of the actual or perceived … age… disability… of any person, to refuse to hire or employ or

to bar or to discharge from employment such person or to discriminate against such person in

compensation or in terms, conditions or privileges of employment."

89. Defendant BROOKDALE HOSPITAL engaged in an unlawful discriminatory practice in

violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and

maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff

on the basis of his age and actual and/or perceived disability, together with creating a hostile

work environment and unlawful termination.

90. Defendant BROOKDALE HOSPITAL also engaged in unlawful discriminatory practices by

discriminating against Plaintiff because of his association with Ms. Thompson and assistance

with her sexual harassment complaint.

## AS AN EIGHTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
## RETALIATION

91. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraph

of this Complaint as if more fully set forth herein at length.

92. New York City Administrative Code Title 8-107(7) provides that:

> "It shall be an unlawful discriminatory practice for any person in any
> activity to which this chapter applies to retaliate or discriminate in any
> manner against any person because such person has (i) opposed any practice
> forbidden under this chapter, (ii) filed a complaint, testified or assisted in
> any proceeding under this chapter (iii) commenced a civil action alleging
> the commission of an act which would be an unlawful discriminatory
> practice under this chapter …"

93. Defendant BROOKDALE HOSPITAL engaged in an unlawful and retaliatory practice by

retaliating, and otherwise discriminating against the Plaintiff because he opposed its unlawful

employment actions, and association with Ms. Thompson and assistance with her sexual

harassment complaint.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant BROOKDALE HOSPITAL:

A.  Declaring that Defendant BROOKDALE HOSPITAL engaged in an unlawful employment practice prohibited by the ADEA, ADA, the NYSHRL and the NYCHRL, on the basis of Plaintiff's age and actual and/or perceived disability, together with creating a hostile work environment, retaliation and wrongful termination.

B.  Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendant BROOKDALE HOSPITAL in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  September 22, 2022
       New York, NY

By:    _____

**PHILLIPS & ASSOCIATES, PLLC**
*Attorneys for Plaintiff*
Silvia C. Stanciu, Esq.
45 Broadway, Suite 430
New York, NY 10006
(212) 248-7431

16